John Herbert KELLENSWORTH, Jr. v. STATE of
Arkansas

CR 82-109                                    644 S.W.2d 933

Supreme Court of Arkansas
Opinion delivered January 31, 1983

262

*Beth Gladden Coulson* and *L. Gene Worsham,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. On December 26, 1978, a man broke into the home of the prosecutrix, threatened her with a knife, choked her, raped her and stole some of her jewelry. During the long ordeal the intruder wore a toboggan cap pulled down over his face and, in addition, blindfolded the prosecutrix. The police subsequently conducted both a visual and a voice out-of-court lineup. Appellant was charged with the crimes and, at trial, testimony of the lineup procedures was allowed into evidence. Appellant was found guilty and was sentenced to two consecutive terms of life imprisonment plus a twenty year consecutive sentence to be served concurrently with a five year sentence. We find no merit in any of the five points argued on appeal and we affirm the convictions. Jurisdiction is in this Court because of the length of the sentences. Rule 29 (1) (b).

Fourteen months after the commission of the crimes the police conducted the lineup procedures. The visual lineup was held in a room designed especially for that purpose. The room has a one-way glass which allows the observer to see into the room but those in the lineup are unable to see the observer. The participants are lined up and given numbers. The observer is then asked if he or she can visually identify any of the persons in the lineup. Here, the visual lineup consisted of six men. The prosecutrix was unable to state that any one of the six was, without question, the person who committed the crimes since she had not seen the face of her attacker. However, she did single out appellant as having the same physical characteristics as the intruder.

The six males in the visual lineup were then rearranged for a voice lineup. In this procedure, the prosecutrix stood on one side of a door and could not observe the same six men who were in the lineup on the other side of the door. Each one came to the door and read phrases which the assailant had uttered during the commission of the crimes. When the prosecutrix heard the appellant's voice, her hands flew to her face and she began sobbing. She unequivocally identified appellant's voice as the voice of her assailant. The men in the lineup were rearranged in order and the same type of procedure was had. Again the prosecutrix unequivocally identified the appellant as her attacker.

Appellant sought to suppress both lineup identification procedures by arguing that he was denied counsel during the lineups and that they were conducted in an unduly suggestive manner. Two suppression hearings were held. The trial court at first ruled that the visual identification should be suppressed but that the voice identification should be allowed into evidence. As the jury selection commenced the State orally moved for the court to re-examine the ruling. The court then carefully examined a transcript of the suppression hearings and studied our opinion in *Kellensworth* v. *State*, 275 Ark. 252, 631 S.W.2d 1 (1982). After the jury was selected, but before opening statements, the trial court reversed the prior ruling and held that neither lineup should be suppressed. The appellant then moved for a continuance but the motion was denied.

At the suppression hearing the prosecutrix testified that, even though the blindfold greatly limited her vision, she could see downward from underneath the blindfold and could see the white color of her attacker's skin. Her testimony was that during the rape she felt his fully dressed upper body and discovered that he had a slight build of body and slender shoulders. In addition she found no physical deformities. She testified that, by standing next to him and measuring his height with hers, he was about five feet five inches tall. She stated that she had smelled the odor of tobacco on his breath and had listened to his voice over the full hour. She additionally testified that she inferred that his age was in the late twenties.

With regard to the voice identification the prosecutrix testified that the intruder talked constantly during the hour long ordeal. He spoke in two different ways, a domineering voice when trying to control her and another voice when answering her questions. She described it as an "Arkansas" voice. She had a clear memory of the voice and spontaneously recognized it when she heard appellant speak.

Appellant contends that the trial court committed reversible error in admitting evidence of the lineup identification procedures. The trial court was correct. In *Harrison v. State*, 276 Ark. 469, 637 S.W.2d 549 (1982), we quoted from *James & Elliott v. State*, 270 Ark. 596, 605 S.W.2d 448 (1978) as follows:

> It is the likelihood of misidentification that taints the out of court identification process. In determining whether an in court identification is tainted by pretrial occurrences, we consider the totality of the circumstances. In doing so, we consider the opportunity of the identifying witness to observe the accused at the time of the criminal act; the lapse of time between the occurrences and the identification; any inconsistencies of the description given by the witness; whether there was prior misidentification; the facts surrounding the identification; and all matters relating to the identification process. *Mayes v. State*, 264 Ark. 283, 571 S.W.2d 420 (1978). We have stated reliability is the linchpin in determining the admissibility of identification testimony. In the determination of the admissibility we consider the totality of the circumstances. *Lindsey & Jackson v. State*, 264 Ark. 430, 572 S.W.2d 145 (1978).

Here, the prosecutrix was able to clearly hear, partially view and sketchily feel her attacker over the period of an hour. While the lineups were held fourteen months after the crimes, her voice identification was certain and undoubting. Immediately after the crimes the prosecutrix accurately described the criminal to the first arriving police officer as being "a white male in his late twenties, being five feet five inches tall, having a light build, wearing a dark mask, a dark jacket, dark glasses and slacks." Thus, the description given

immediately after the crimes was consistent with the lineup identification. Her degree of attention was impressive. She made no misidentification. The police made no spoken suggestion about people in the lineup. Appellant called an expert witness to testify that the disparity in the ages of appellant and the other participants in the voice lineup would constitute an impermissive suggestiveness. However the witness then admitted that he had not heard the voices of the men in the lineup and that some young men have deeper voices than do some older men. Thus, the disparity in ages was of questionable significance. The trial judge held the identification evidence admissible. We do not reverse a trial judge's ruling on the admissibility of identification evidence unless it is clearly erroneous as it is a ruling on a mixed question of law and fact. *Glover* v. *State,* 276 Ark. 253, 633 S.W.2d 706 (1982). We cannot say the trial judge was clearly in error in this case. On the totality of the circumstances the lineups were sufficiently reliable to withstand examination under the Due Process clause. There is no substantial likelihood of irreparable misidentification.

Appellant argues that the visual lineup was admitted into evidence upon an incomplete identification and the vocal lineup was suggestive. However, after reliability is established, those arguments go to the weight to be given the evidence, not to an exclusionary rule. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson* v. *Brathwaite,* 432 U.S. 98 (1977), citing *Neil* v. *Biggers,* 409 U.S. 188 (1972). Four years later, the Supreme Court reinforced the concept by stating:

Thus the Court's opinion in *Manson* v. *Brathwaite* approvingly quoted Judge Leventhal's statement that,

"'[w]hile identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart — the 'integrity' — of the adversary process.

" 'Counsel can both cross-examine the identification witness and argue in summation as to factors causing doubts as to the accuracy of the identification — including reference to both any suggestibility in the identification procedure and any coutervailing testimony such as alibi.' " 432 U.S., at 114, n. 14, quoting *Clemons* v. *United States*, 133 U.S.App.D.C. 27, 48, 408 F.2d 1230, 1251 (1968) (concurring opinion) (footnote omitted).

*Watkins* v. *Sowders*, 449 U.S. 341 (1981).

Once the trial court found the identification procedures to be reliable it was for the jury to decide what weight, if any, they would give to an incomplete visual identification and what weight they would give to an arguably suggestive voice identification, for "the proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform." *Watkins* v. *Sowders, supra*. Here the attorney for appellant exhaustively cross-examined the prosecutrix on her identification and skillfully argued the matter. The trial court was correct in ruling that the jury should be allowed to weigh the identification evidence.

The appellant next contends that the trial court erred in denying his motion for a continuance after reversing his ruling on admissibility of the visual lineup. We find no error.

In *Stephens* v. *State*, 277 Ark. 113, 640 S.W.2d 94 (1982), we stated:

A motion for a continuance is addressed to the sound discretion of the trial court. Its action will not be reversed absent a clear abuse of that discretion amounting to a denial of justice and the burden is on the appellant to demonstrate such abuse. *Russell* v. *State*, 262 Ark. 447, 559 S.W.2d 7 (1977). In considering whether the court's discretion has been abused in a particular case, the circumstances of the case must be

examined with emphasis on the reasons presented to the judge at the time. *Tyler* v. *State*, 265 Ark. 822, 581 S.W.2d 328 (1979).

The circumstances surrounding this case demonstrate a real need for the trial judge to grant a continuance only upon the presentation of valid and specific reasons. This case was (1) set for October 27, 1980, (2) passed to January 12, 1981, (3) reset for May 4, 1981, and (4) reset for November 30, 1981. On that day, after the jury was empanelled and sworn the appellant received a continuance, and the case was (5) reset for December 15, 1981. On that date a mistrial was granted because the appellant had escaped and a juror had read about a different conviction of appellant. The case was (6) reset for February 22, 1982 and then (7) reset for April 12, 1982. On that date the trial commenced and the appellant moved for yet another continuance. He offered no specific reasons. He did not contend that the reversal of his prior ruling on the visual lineup required different or additional witnesses nor did he give any other detailed reason why he needed more time. The reversal of the earlier suppression ruling affected only a limited part of the case. As recited by the trial judge, the appellant's attorney had previously explored that limited part of the case at the two prior suppression hearings. No unknown or new evidence was allowed by the ruling. The trial court did not abuse his discretion in denying the motion.

Appellant's next point is that the trial court erred in refusing to allow him to test the prosecutrix's auditory memory with a recording of various voices. The trial court excluded the evidence on the grounds that it was neither identical with nor similar to the prosecutrix's prior first-hand voice identification. The lack of similarity was demonstrated during appellant's proffer of the recording when it was necessary to replay a part of the recording because the witness stated it was "distorting." A ruling on relevancy is discretionary with the trial court and its decision will not be reversed unless an abuse of the trial court's discretion in the matter is found. *See e.g., Daniels* v. *State*, 277 Ark. 23, 638 S.W.2d 676 (1982); *Rasmussen* v. *State*, 277 Ark. 238, 641 S.W.2d 699 (1982).

The rationale of our rule is well set out in McCormick's Evidence § 202 (1972 ed.):

> Here . . . the question is one of weighing the probative value of the evidence of experiments against the dangers of misleading the jury (who may attach exaggerated significance to the tests), unfair surprise, and, occasionally, undue consumption of time. The danger of arousing hostility or prejudice is seldom present in respect to this type of evidence. Usually the best gauge of the probative value of experiments is the extent to which the conditions of the experiment were identical with or similar to those obtaining in respect to the litigated happening. Accordingly, counsel in planning experiments must seek to make the conditions as nearly identical as may be, and in presenting the evidence he must be prepared to lay the foundation by preliminary proof of similarity of conditions. Though the similarity formula is sometimes over-rigidly applied, most courts will recognize that the requirement is not a relative one, so that where a high degree of similarity is not attainable, the court might still conclude that the results of the experiment are of substantial enlightening value to the jury and admit the evidence. Manifestly, if the trial judge is to be given responsibility for exercising such an indefinable value-judgment he must be accorded a reasonable leeway of discretion reviewable only for abuse.

Considering the facts before him, the trial judge did not abuse his discretion in disallowing the experiment.

Appellant's final contention is that the trial court erred in admitting a charm bracelet into evidence. The bracelet was identified as one belonging to the prosecutrix and which had been stolen from her home on the night of the crimes. Appellant contends that the bracelet was not connected to him and therefore is not relevant.

On various occasions appellant and his paramour occupied her father's house. Her father consented to a search of his house. The prosecutrix's charm bracelet was found in

the paramour's bedroom which, according to her father's testimony, had been occupied on occasion by his daughter and appellant.

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Ark. Unif. Rules of Evid. Rule 401, Ark. Stat. Ann. § 28-1001 (Repl. 1979).

The discovery of the charm bracelet in a room which had been occupied by appellant after the crimes had a tendency to make his identity as the intruder more probable than it would have been without that evidence. Therefore the circumstantial evidence was relevant and admissible. *Parker* v. *State,* 266 Ark. 13, 582 S.W.2d 34 (1979).

Pursuant to Rule 11 (f) we have reviewed all objections decided adversely to appellant and find no prejudicial error.

Affirmed.