**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Mark SEATON, Defendant-Appellant.**

**No. 13324.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 18, 1984.

Motion for Rehearing Overruled and to
Transfer to Supreme Court Denied
July 5, 1984.

Application to Transfer Denied
Sept. 11, 1984.

John D. Ashcroft, Atty. Gen., Deborah Neff, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Frank V, DiMaggio, Asst. Public Defender, Springfield, for defendant-appellant.

PREWITT, Judge.

Defendant was convicted of burglary and of rape. He was sentenced to one year in prison for burglary and 20 years for rape with the sentences to run concurrently.

We first consider his contention that the evidence at trial was insufficient to sustain the jury's verdicts of guilty. In reviewing to determine if the evidence was sufficient to support the charge, we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Edwards*, 657 S.W.2d 343, 346 (Mo.App.1983); *State v. Manning*, 612 S.W.2d 823, 825 (Mo.App.1981).

The evidence established that someone had broken into the victim's apartment and raped her. The only serious question is whether defendant was adequately identified as that person. Because the victim's face was covered by her assailant she never saw him.

Defendant and the victim lived in the same apartment building. Their apartments adjoined and the back doors of each opened onto the same back porch. The rape occurred shortly after 7:30 a.m. and defendant was seen at the apartment building just after 8:00 a.m.

The victim had previously talked to the defendant on several occasions and identified the voice of her assailant as being that of defendant. In struggling with him she dug her fingernails into his arm. When defendant was arrested at approximately noon on the day of the offense he had four marks on his right arm. The arresting officer described them as follows:

"The marks were I believe you would call them a half moon crescent. It was in the shape of a partial circle and approximately an eighth of an inch to three-sixteenths of an inch long and they were raised red welts and at the top of the very mark would be where the skin was lacerated but not bleeding. It was just flaked and it was shaped in kind of a claw-like shape. It was—the marks varied around the area to where if you put your hand on to someone it wouldn't be a straight line, the marks would start with your index finger and go around to your little finger of your hand and they very much resembled the fingernails that were taken from the victim the day that the rape occurred."

Defendant at first indicated that the marks were flea bites and then approximately ten minutes later said he got the marks when he was cleaning out a garage.

Pubic hair in the pants that the victim was wearing at the time she was attacked, and on the mattress where the rape took place, were found by a "police chemist" to match pubic hair samples of the defendant. The chemist said "that some of the hair on the bed mattress were classically characteristic as being common origin with those of the defendant and I found the hair in the panties to be classical, conforming in struction and consisting with common origin as that of the defendant."

The chemist said the probabilities would be that only one person in 5000 would have hair of the same characteristics as that hair. He said the hair did not come from the victim or her fiance. Apparently she had spent the night before with him.

It appears obvious to us that the evidence was sufficient for the jury to find that defendant committed the offenses. This point is denied.

We next consider defendant's contention that the trial court erred in not allowing his

attorney to cross-examine the victim by using a taped recording containing the defendant's voice and voices of three other males. Defendant's attorney intended to ask her to identify which was the defendant's voice.

The state contends that the trial court's ruling was correct because the tape was not disclosed to the state in discovery and there was not an adequate foundation for its use. Citing *U.S. v. Smith,* 635 F.2d 716, 718–719 (8th Cir.1980), it claims that before the tape could be used it must be shown that the recording device was capable of recording what was offered; that the operator of the recording device was competent to operate it; that the recording is an authentic and correct reproduction of the voices recorded; that changes had not been made in the recording; that the speakers are identified; and that the tape had been properly preserved.

We do not reach the discovery question. Nor do we decide if a foundation as claimed by the state must be established. Allowing demonstrations in front of the jury is within the discretion of the trial judge. *State v. Sadler,* 613 S.W.2d 682, 686 (Mo.App.1981).

Certainly the tape does not prove itself and some foundation for its use must be made. See *Kellensworth v. State,* 278 Ark. 261, 644 S.W.2d 933, 937 (1983), where a similar use of a recording was attempted. Here no attempt was made to identify and authenticate the tape. Until a proper foundation for its use was shown the refusal to allow its use could not constitute an abuse of discretion. Cf. *M & A Electric Power Cooperative v. Tomlinson,* 608 S.W.2d 571, 573 (Mo.App.1980). See also *Lietz v. Snyder Manufacturing Company,* 475 S.W.2d 105, 107 (Mo.1972); *State v. Allison,* 330 Mo. 773, 51 S.W.2d 51, 54 (1932). This point is denied.

Defendant also contends that the trial court erred in admitting the testimony of the police chemist because there was no evidence that the "scientific tests and procedures" he performed "had been sufficiently established to have gained general acceptance in the particular field in which it

belongs." Defendant contends in his remaining point that the trial court erred in failing to give an instruction defining "serious physical injury".

According to the record both points were first raised on appeal. Any contention regarding the testimony of the chemist was not preserved for appellate review as no objection was made at the time the evidence was offered. See *State v. Byrnes,* 619 S.W.2d 791, 793 (Mo.App. 1981). Also that contention and the instructional error were not preserved for our review as they were not included in the motion for new trial. See Rule 29.11(d); *State v. Blair,* 631 S.W.2d 91, 94 (Mo.App. 1982).

Anticipating that these points may not have been properly preserved, defendant's brief asks that we review them as plain error. As the record discloses that no manifest injustice or miscarriage of justice has resulted from the errors claimed, such review is not appropriate. Rule 30.20.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.