**STATE of Missouri, Respondent,**

v.

**Gary L. BARNES, Appellant.**

**No. WD 36852.**

Missouri Court of Appeals,
Western District.

July 1, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1986.

Application to Transfer Denied
Sept. 16, 1986.

Richard L. Colbert, Kansas City, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and BERRY and GAITAN, JJ.

GAITAN, Judge.

Gary L. Barnes (defendant-appellant) was convicted of robbery in the first degree, § 569.020, RSMo 1978, and armed criminal action, § 571.015, RSMo 1978, in a trial by jury. He appeals those convictions alleging the trial court erred on three points: First, by allowing submission of robbery in the first degree when the element of serious physical injury required by § 556.061(26), RSMo Cum.Supp.1984 was lacking; second, by not submitting assault as a lesser included offense instruction to the robbery first degree; and finally, by not instructing the jury as to his defense to the robbery charge. The judgment of the trial court is affirmed.

On the evening of July 27, 1984, Ricky Tolfree, the victim, met appellant at a social club in Kansas City. They had known each other for approximately fourteen years (since high school), but had not seen each other for two and one-half years. At appellant's request, Tolfree loaned him five dollars. While in the process of getting the five dollars from his pocket, Tolfree displayed to appellant a large amount of money he was carrying. The two men eventually left the club and went to buy some beer. They drove around with appellant's girl friend, Carolyn Williams whom Tolfree had met four years before. They proceeded to Spring Valley Park where they stopped and Tolfree and appellant got out of the car to talk. When Ms. Williams joined them from the car, Tolfree walked up to her and hugged her stating he had not seen her in a long time. Suddenly, appellant put his arms around Tolfree as if to embrace him but with his hands around his neck. Appellant proceeded to push Tolfree over a hill and both men slid down into what was apparently a ravine.

Tolfree and appellant struggled down the hill and they landed with appellant on top. When Tolfree tried to get up, appellant had a knife at his throat. Tolfree's hand was cut as he tried to protect his throat from the blade. Appellant demanded that Tolfree give him his money and he resisted, attempting to bury it in the mud. Appellant was on top pinning Tolfree's arms down while his face was in the mud. Appellant directed Ms. Williams to take his money which was later determined to be $380. When she could not take it from Tolfree, the appellant stabbed him in the lower back. When Tolfree would not release the money; appellant told him to let go or he would cut his hand off. Appellant then cut Tolfree's right hand, his right little finger. At that point, Tolfree could no longer hold the money and dropped it on the ground. Ms. Williams picked it up and left with appellant.

After appellant and Williams left, Tolfree lay there for a while and then eventually managed to climb up the hill to get help. Someone finally called the police and when they arrived, he was lying on the sidewalk: short of breath, bleeding and extremely muddy. The police officer saw wounds on both of his hands, severe cuts on his fingers and a puncture wound just below his ribs.

Tolfree described the struggle and robbery to the police. Appellant's explanation of the struggle was quite different. He claimed that Tolfree had lost money to him earlier in a gambling game and started the fight because he thought the game was rigged.

Tolfree was then taken to the hospital where he received treatment from July 28 to August 4. He had been stabbed in the posterior chest, resulting in a subcutaneous emphysema and pneumothorax. The medical testimony indicated that had the chest wound gone untreated, it would have been life threatening. Tolfree suffered lacerations in his left hand and right little finger. A nerve was cut resulting in permanent numbness on the side of his finger.

The jury deliberated and found appellant guilty of first degree robbery and armed criminal action.

The points on appeal will be addressed in the following order:

I. Were the injuries suffered by Tolfree "serious physical injuries" as defined by § 556.061(26);

II. Was appellant entitled to an instruction on assault; and

III. Since appellant failed to object or tender a defense instruction, was the court required, Sua sponte, to submit this instruction given appellant's explanation as to the events, (a gambling argument where Tolfree was the aggressor).

A problem common to each of these alleged errors is the failure of the appellant to properly preserve them for appeal.

I.

As to point one, appellant alleges that the trial court erred in submitting Instruction No. 5 because of the failure to produce sufficient evidence that the victim suffered serious physical injury as required by said instruction. Serious physical injury as defined in § 556.061(26) "means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of the body."

Appellant has failed to set forth in his argument regarding the submission of Instruction No. 5 the instruction itself in accordance with Rule 30.06(e). *State v. Gadberry*, 638 S.W.2d 312, 314 (Mo.App.1982). Consequently, any review of the alleged error must be governed by the doctrine of plain error.

When reviewing to determine whether evidence is sufficient to support a charge, this court shall accept as true all the evidence favorable to the state, including all favorable inferences drawn from the evidence. This court should disregard all evidence and inferences to the contrary. *State v. Mentola*, 691 S.W.2d 420, 421 (Mo.App.1985).

Tolfree had been stabbed in his chest between his seventh and eight ribs. This wound resulted in subcutaneous emphysema, indicating that there was air beneath the skin and around the wound and that a stabbing instrument had entered the chest cavity. According to Dr. Tom Reardon, the examining physician, subcutaneous emphysema is a serious injury. In fact, any chest wound is potentially life-threatening. The injury necessitated exploratory surgery to determine whether Tolfree suffered a lacerated liver or punctured bowels. Further, Tolfree developed pneumothorax—air introduced around the lung preventing it from fully expanding. This injuries necessitated surgery, requiring Tolfree to be hospitalized for seven days. There were two stab wounds on his left hand, and his right little finger was severely impaired. Tolfree will suffer permanent numbness on the side of his finger. In *State v. Davis*, 689 S.W.2d 743, 744 (Mo.App.1985), a 10-day stay in the hospital, along with a broken jaw and impaired vision, warranted a submission of serious physical injury.

When appellant attempted to take the money from Tolfree, he was not concerned with whether the injuries he inflicted were serious physical injuries or just physical injuries. It is clear from the testimony that appellant intended to take Tolfree's finger, if not his life, had he not turned the money over. As it turned out, Ricky Tolfree's injuries were life-threatening and indeed he suffered an impairment to the functions of his finger. The court properly instructed the jury on serious physical injury. The jury as the fact finder had the option of not believing the injuries were "serious physical injuries" and thereby acquitting the appellant on the charges of robbery first degree or robbery second degree. They obviously believe those injuries to be "serious physical injuries." *State v. Davis*, 689 S.W.2d 743; *Cf. State v. Ellis*, 639 S.W.2d 420, 422 (Mo.App.1982).

Thus, there clearly was sufficient evidence that Tolfree suffered serious physical injury, and the trial court's submission of Instruction No. 5 was proper.

## II.

As to appellant's second argument, it appears from the record that appellant did not oppose the submission of the verdict directing instruction or tender an alternative instruction incorporating his newly raised theory of assault. This omission is not without a penalty.

General rules of appellate review require an objection and proper request for relief as a predicate to examination of a matter arising during trial and absent such objection, the point is not preserved for appellate review. *State v. Pospeshil,* 674 S.W.2d 628, 633 (Mo.App.1984).

Again, the only other method for review by this court involves plain error. In reviewing for plain error, the relevant question is whether the record demonstrates error which so substantially affects rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Williams,* 664 S.W.2d 226, 228 (Mo.App.1983); *State v. Fitzpatrick,* 676 S.W.2d 831 (Mo. banc 1984). Under the plain error rule, it is the defendant's affirmative burden to show manifest injustice and a violation of substantial rights. *State v. Kayser,* 671 S.W.2d 352, 355 (Mo.App.1984); Rule 29.-12(b).

◼ Appellant relies on *State v. Bigham,* 628 S.W.2d 681, 682 (Mo.App.1982), to support his position. Although this case does state that assault is a lesser included offense of robbery in the first degree, it also states the trial court must instruct on all lesser included offenses *supported by the evidence.* "... [A] defendant may not complain about a court's failure to give a lesser-offense instruction unless the defendant requests it specifically, except in the homicide cases which are governed by a different standard." *State v. Olson,* 636 S.W.2d 318, 322–23 (Mo. banc 1982). *See State v. Smith,* 592 S.W.2d 165 (Mo. banc 1979).

An instruction on a lesser included offense is required only if defendant requests it and there is evidence to support an acquittal on the greater offense and conviction of the lesser offense. [Citations omitted.] The evidence must show lack of an essential element of the greater offense to require instruction on the lesser offense.

*State v. Perkins,* 679 S.W.2d 410, 411 (Mo. App.1984); *State v. Bigham,* 628 S.W.2d at 682. In *Perkins,* the defendant requested the instruction on robbery second degree. The court found there was no evidence to support an acquittal on the greater offense of robbery first degree so the instruction was not given. In the instant case, the appellant did not request an instruction on assault. Where the proof of a defendant's guilt of the charged offense is strong and substantial and the evidence clearly shows the commission of the more serious crime, it is not necessary to instruct on a lesser included offense. *State v. Harris,* 598 S.W.2d 200, 203 (Mo.App.1980).

◼ One can only speculate as to why the appellant chose not to request an assault instruction. There is a certain amount of strategy to such a decision. If the state could not establish the elements of robbery first degree or robbery second degree, the defendant would be acquitted. Defendant gambled and lost. In the present case, the proof of first degree robbery was substantial. The state proved that appellant stabbed Tolfree multiple times and that appellant and Williams stole $380 from Tolfree. These stabbings resulted in serious physical injuries to the victim, Ricky Tolfree.

Appellant relies on his own testimony to show that he was party to an altercation, but denies robbery as a motive. Appellant claims the victim lost his money to him in a gambling game and started a fight over whether that game was rigged. He admits being a party to the altercation but denies committing either serious physical injury or physical injury to Tolfree. How, then, may he assert a defense of assault? A similar argument was set forth in *State v. Eidson,* 701 S.W.2d 549, (Mo.App.1985), wherein appellant also relied on his own self-serving statements. In *Eidson,* the court said, "Only where there is a basis for a verdict

acquitting the defendant of the offense charged *and* convicting him of the lesser offense is an instruction on the lesser offense required. § 556.046 RSMo (1978). This two-pronged analysis is necessary because a jury has the option of finding the accused not guilty of the offense charged." *Id.* at 551.

Here, as in *Eidson,* evidence that appellant committed the robbery was strong. That evidence, if believed, proves all the elements of robbery first degree or robbery second degree. Appellant has not shown that either manifest injustice or a violation of substantial rights resulted from the exclusion of an assault instruction. Appellant's argument on this point must fail.

### III.

 We now turn to appellant's last assertion regarding his alleged defense instruction. The appellant rightfully asserts that instructions which purport to cover the whole case but which entirely ignore a defense that is supported by the evidence are erroneous and as such constitute reversible error. *State v. Tate,* 436 S.W.2d 716 (Mo. 1969).

Appellant cites *State v. Cummings,* 516 S.W.2d 49 (Mo.App.1974), *State v. Foster,* 631 S.W.2d 672 (Mo.App.1982), and *State v. Scott,* 649 S.W.2d 559 (Mo.App. 1983), in support of his position. Those cases stand for a fair and just principle of law, but are not applicable to this case. In each of the cases cited there was evidence offered and a specific MAI instruction tendered by the defendant and rejected by the court. In appellant's case, there was no instruction offered by appellant at trial nor was the issue raised by the appellant in his motion for new trial. Instead, appellant raises this theory of defense for the first time on appeal. His theory neither embodies nor purports to represent a defense covered by an approved defense instruction. He believes the court should have acted solely on the appellant's self-serving version of the facts as the basis for a defense instruction.

By appellant's inaction, he has waived this issue on appeal. *State v. Seaton,* 674 S.W.2d 214, 216 (Mo.App.1984); *State v. Gadberry,* 638 S.W.2d 312–13, (Mo.App. 1982). As stated earlier, the only other method of review is plain error. Under Rule 30.20, an appellate court has discretion to review a point as plain error when it finds "manifest injustice or miscarriage of justice has resulted." "However, this rule is not to be routinely invoked, should be used sparingly, and is limited to causes possessing a strong, clear showing of manifest injustice." *State v. Sammons,* 640 S.W.2d 488, 490 (Mo.App.1982). The appellant has the burden of proving manifest injustice and has failed to meet that burden. For these reasons, he must fail on this point.

The judgment of the trial court is affirmed.