Irwin GIDRON *v.* STATE of Arkansas

CR 92-1388                                               872 S.W.2d 64

Supreme Court of Arkansas
Opinion delivered March 21, 1994

*Davis H. Loftin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Irwin Gidron, was sentenced to twenty-six years and fined $10,000 for the second-degree murder of Joseph Houston and the second-degree battery of Sonya Woodley. Although he raises five arguments for reversal of his conviction, none having merit, we must first address and resolve a jurisdictional consideration.

This case was certified to our court by the court of appeals pursuant to Ark. R. Sup. Ct. 1-2(a)(3) because it calls for an interpretation of our rules as to the timeliness of the filing of this appeal under a former rule, Ark. R. Crim. P. 36.4. Pertinent to this issue are the following filings:

| March 26, 1990 | Judgment of Gidron's conviction for second degree battery and murder in the second degree. |
| April 18, 1990 | Gidron's motion for new trial arguing ineffective assistance of counsel pursuant to Ark. R. Crim. P. 36.4. |

May 18, 1990      Gidron's notice of appeal from the court's March 26th judgment.

The jurisdictional problem arises because Gidron filed his notice of appeal after the trial court's judgment of conviction was entered but before his post-trial motion for new trial under Ark. R. Crim. P. 36.4 claiming ineffective assistance of counsel was acted upon by the trial court. In fact, the record is silent as to any disposition; thus, we are faced with the question of whether or not Ark. R. App. P. 4(c), which provides that certain motions are "deemed denied" after thirty days, applies when a motion for new trial was filed under Rule 36.4 which was abolished in part by our Per Curiam Order of October 29, 1990, effective January 1, 1991. *In Re: Post-Conviction Procedure*, 303 Ark. 745, 797 S.W.2d 458 (1990).[1]

Obviously, counsel for Gidron was caught in a "Catch-22" situation due to the apparent conflicts between that portion of Ark. R. App. P. 4(c) which provides that motions are deemed denied after thirty (30) days and Ark. R. Crim. P. 36.4 which stated, in part:

> The trial judge must address the defendant personally and advise the defendant that if the defendant wishes to assert that his or her counsel was ineffective a motion for a new trial stating ineffectiveness of counsel as a ground must be filed within thirty (30) days from the date of pronouncement of sentence and entry of judgment. The judge must further advise the defendant that, if a motion for a new trial is filed asserting facts sufficient to raise an issue whether his or her counsel was ineffective, a hearing will be held, and *the time for filing a notice (of) appeal will not expire until thirty (30) days after the disposition of the motion*, as provided in Rule 36.22. (Amended by Per Curiam May 30, 1989, effective July 1, 1989).

(Emphasis added.)

Rather than attempt to resolve this conflict concerning a rule which is now nonexistent, we take the same tack as we did in *Tucker* v. *State*, 311 Ark. 446, 844 S.W.2d 335 (1993),

---

[1]Per our revised Ark. R. Crim. P. 36.9, Ark. R. App. P. 4(c) does not apply to Rule 37 petitions for post-conviction relief.

where we accepted an appeal as a belated appeal under Ark. R. Civ. P. 36.9 because there was some justifiable confusion as to application of Ark. R. App. P. 4(c) and because the problems in filing the appeal were not brought about by inadvertence on the part of counsel. Here, as in *Tucker, supra*, there was obvious conflict in our rules regarding the proper procedures in filing this appeal, which, obviously, created confusion to counsel. For this reason, we accept this case as a belated appeal and decide it on its merits. *See Kelly* v. *Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992) and *Mangiapane* v. *State*, 314 Ark. 350, 862 S.W.2d 258 (1993). In doing so, we affirm the trial court.

The facts giving rise to this appeal are as follows. John Barry and Barry's cousin were at a pool hall in West Memphis, Arkansas, in the middle of the night when Adolphus Graves got into an altercation with them. Mr. Graves left the pool hall only to run into Barry, his cousin, and the appellant, Gidron. Graves tried to run away from them, but they chased him with a gun, firing shots.

Escaping them, Mr. Graves hid in a ditch and heard them pass. He then ran down the street and went over a fence. Again, Barry and Gidron caught up with him, only to have him slip away. He ran past a girl, telling her that he had been shot (although this turned out to be a cut). She ran in the house and called the police.

This house was the residence of Doris Houston and her husband, the murder victim Jôseph Houston. Mrs. Houston testified that on the night of the murder, she and her husband were in bed and their children were outside. Their daughter Jennifer told them that someone was shooting outside their door, and Mr. Houston walked into the living room. A voice outside announced, "You better tell him to come out because I know he came in there and if he don't come out, we're gonna start shooting." Gun shots poured through the door and window, and Mr. Houston was shot in the stomach. The front door, china cabinet, microwave, stereo, and dining-room wall were riddled with bullets. Mr. Houston died about nine days later as a result of his bullet wound.

Sonya Woodley testified that, prior to the shooting, she was sitting on the Houstons' front porch when a man ran by with Barry and Gidron chasing him. Barry and Gidron stopped and

asked her and the others if they had seen Graves. When they said "no," the men warned that they were going to shoot up the house if Graves was not sent out. Gidron pulled out a gun, and Sonya and her friends ran into the house. During the ensuing attack, Sonya was shot in the leg.

### Jury Selection

We consolidate Gidron's first two arguments since they pertain to jury selection, and in particular, to the trial court's failure to exclude a juror as well as its failure to quash the jury panel. Gidron complains that he and his co-defendant had antagonistic defenses and that each should have been given separate peremptory challenges for a total of sixteen rather than eight, and that by so limiting the co-defendants' challenges, Gidron was forced to accept a juror that the trial court refused to excuse for cause. In addition, Gidron complains that after the initial jury panel was seated, he "noticed, in looking around the courtroom, [that there] didn't seem to [be] any other black males in the courtroom, the result being that no black males were present" for jury panel selection, and for this reason, the jury panel should have been quashed.

We do not reach these issues as no record was made regarding jury selection or voir dire of the prospective jurors. The first mention of these claimed errors appears in the transcript of trial at the middle of the State's case, after the first day of testimony, and consists of dialogue between Gidron's counsel, the prosecuting attorney, and the trial court concerning the trial court's permission to grant Gidron's counsel to make a belated record of his objection to the jury venire.

Granted, the trial courts and counsel, in efforts to expedite proceedings, have on occasion treated various matters in a rather cursory fashion and have deferred making appropriate motions and rulings to some later time during the course of trial. Consequently, a premium has too often been placed on procedural convenience at the expense of the observance of certain basic requirements, *see Cummings v. State*, 315 Ark. 541, 869 S.W.2d 17 (1994); however, we have repeatedly held that an issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal, *Walker v. State*, 313 Ark. 478, 855

S.W.2d 932 (1993). By going to trial without objection to the manner in which the jury was impaneled, the appellant must be deemed to have waived any irregularity in the order of selecting the jury. *Bowlin* v. *State*, 175 Ark. 1115, 1 S.W.2d 553 (1928). In order to preserve objections regarding any irregularities affecting the selection or summoning of the jury panel, a timely objection must be made. *See Edens* v. *State*, 235 Ark. 996, 363 S.W.2d 923 (1963); *Underdown* v. *State*, 220 Ark. 834, 250 S.W.2d 131 (1952). Here, there was nothing timely about Gidron's objections. Moreover, the burden of obtaining a ruling from the trial court is upon the movant, and unresolved questions and objections are therefore waived and may not be relied upon on appeal. *Patrick* v. *State*, 314 Ark. 285, 862 S.W.2d 239 (1993).

In short, the burden is on the appellant to provide a record sufficient to show that reversible error occurred. *Kittler* v. *State*, 304 Ark. 344, 802 S.W.2d 925 (1991). This was not done in this instance.

### Admission of Photograph of Deceased

In his next argument, Gidron contends that the court erred in admitting exhibit three, a photo of the deceased, for the jury's consideration. This objection was preserved, but Gidron failed to give a basis for the objection. According to Arkansas Rule of Evidence 103(a)(1), an error may not be predicated upon a ruling admitting evidence unless there was a timely objection stating the specific ground for objection, if the specific ground was not apparent from the context. Here the photograph in issue was of the deceased's head and torso. However, Gidron had no objection to admission of photos of the bullets removed from Mr. Houston's body and a closeup shot of his abdomen to show his fatal wound. Therefore, the specific ground for his objection to exhibit three is not clear.

Regardless, Gidron has failed to demonstrate how this photograph was prejudicial. He contends that the photo was irrelevant and was used to portray the victim as old and frail. Since the jury had already been informed that Mr. Houston was 67 years old and in bad health, these characterizations of the victim were not unique. Besides, admission of evidence is within the discretion of the trial judge, and he will not be reversed absent a show-

ing of abuse of that discretion. *Moore* v. *State*, 315 Ark. 131, 864 S.W.2d 863 (1993); *Kellensworth* v. *State*, 278 Ark. 261, 644 S.W.2d 933 (1983). Gidron has failed to establish that the trial judge abused his discretion in admitting the photograph into evidence.

## *Failure to Direct a Verdict*

■ Gidron also claims that the court erred in refusing to grant him a directed verdict as to the charge of first-degree murder. Even though he was only convicted of second-degree murder, he contends that if the court had granted his directed verdict motion, then the jury might have given him less than second-degree murder. Gidron has failed to show how he was prejudiced. Besides, we have held that where the defendant's request to reduce his charge from first- to second-degree murder was denied, error, if any, was cured by the jury finding him guilty of a lesser charge. *Montgomery* v. *State*, 277 Ark. 95, 640 S.W.2d 108 (1982).

## *Refusal to Instruct on Lesser Included Offense*

■ Lastly, Gidron complains that the court erred in refusing to give his proffered jury instruction as to negligent homicide. However, this was not error, for we have stated that "where a lesser included offense has been the subject of an instruction and the jury convicts of the greater offense, error resulting from a failure to give instructions on the lesser included offense is cured." *Branscomb* v. *State*, 299 Ark. 482, 489, 774 S.W.2d 426, 429 (1989).

■ Applying *Branscomb* to the facts before us, we note that the jury was instructed as to murder in the first degree, second degree, as well as on manslaughter, and, the jury found Gidron guilty of murder in the second degree. Thus, there is no reason to believe that the jury would have found Gidron guilty of a negligent act, and we hold that the jury instruction was not supported by the facts.

Affirmed.

CORBIN, J., not participating.