Scharel Ann BURLEY *v.* STATE of Arkansas

CA CR 00-1356                                   57 S.W.3d 746

Court of Appeals of Arkansas
Division IV
Opinion delivered October 24, 2001

*Mason Law Firm, PLC*, by: *Jeffrey W. Hatfield*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Scharel Ann Burley was convicted of second-degree murder and sentenced by a jury to eighteen years' imprisonment in the Arkansas Department of Correction. Burley raises two points on appeal. First, she contends that there was insufficient evidence to support the jury verdict. Second, Burley argues that the trial court abused its discretion by allowing the State to introduce evidence of an alleged prior bad act under Rule 404(b) of the Arkansas Rules of Evidence. We reverse and remand on the second point.

## I. Facts

On Wednesday, January 12, 2000, Central Emergency Medical Services responded to a 911 call from Prairie Grove, Arkansas. The paramedics arrived at the caller's home at 8:48 p.m. to assist a baby in distress. Moments after the paramedics arrived, the baby stopped breathing. The child was identified as eighteen-month-old Samuel Sams. Samuel had been vomiting clear liquid and green mucus, and was breathing at a rate of ten breaths per minute. The paramedics began CPR and transported Samuel to Washington Regional Medical Center. He was pronounced dead at 10:47 p.m.

Dr. Charles Kokes, a medical examiner with the State Crime Lab, performed the autopsy. The cause of death was determined to be acute peritonitis caused by a tear in the child's bowel. The tear was caused by an end-cap of a thermometer, measuring about three inches in length. The end-cap was still inside Samuel at the time of the autopsy. Dr. Kokes testified that peritonitis is associated with severe pain, but is not necessarily fatal. He further testified that the perforation of the rectal wall occurred six to twenty-four hours prior to Samuel's death. Dr. Kokes opined that the force necessary to cause this type of tear would be roughly equivalent to pushing the eraser end of a pencil through six sheets of Saran Wrap. The medical examiner ruled Samuel's death a homicide and concluded that the perforation of his rectum wall by a thermometer cap was "not an accidental happenstance."

Appellant was the child's caregiver at the time that the emergency call was made. Samuel had been in her care since Saturday,

January 8, 2000. She told investigators that Samuel had a fever when she picked him up from his mother's home on Saturday and that she had taken his temperature each day he had been in her care using a digital ear thermometer. Appellant denied ever using a rectal thermometer on Samuel and stated that although she did own a rectal thermometer, she had not seen it for several months. She also told the investigator that she had called the emergency room when Samuel's condition began to deteriorate and was told that Samuel would be fine as long as she could keep him hydrated. During the course of the investigation, appellant admitted that Samuel had not left her sight while he was in her charge, and that she was his only caregiver during the time period in question.

A search of a trash can in appellant's home produced a clear piece of a thermometer cover that matched the piece found inside of Samuel's abdominal cavity. The police also found a rectal thermometer on a bookshelf in appellant's apartment. Paul Williams testified that around Thanksgiving he gave appellant a rectal thermometer that he received during a promotional event held by his employer, Wal-Mart. He further testified that he had seen Samuel the evening prior to his death and that there "was nothing wrong with him." However, Williams also testified that the next morning he observed Samuel in a crib and he "was just laying there like he was dead."

Brenda Westphall testified that her son had been in appellant's care on Sunday, January 9, 2000. She further stated that she borrowed a rectal thermometer from appellant on Sunday when she came to pick up her son. After taking her son's temperature, she left the thermometer, with both pieces of the protective cover intact, on a nightstand in appellant's apartment. According to Westphall's testimony, the following day she noticed that the thermometer had been moved from the nightstand. Two other witnesses testified that they had observed appellant taking Samuel's temperature using a rectal thermometer. Finally, appellant's telephone records were subpoenaed and the police found no evidence that appellant had made a call to the emergency room to seek advice on Samuel's care.

On February 18, 2000, appellant was first charged with second-degree murder; however, the information was later amended to first-degree murder. A jury trial was held on August 8-9, 2000. A jury found appellant guilty of murder in the second degree, sentenced her to eighteen years' imprisonment in the Arkansas Department of Correction, and imposed a $12,000 fine.

## II. Sufficiency of the Evidence

First, appellant challenges the sufficiency of the evidence to support the jury verdict of second-degree murder. Specifically, appellant argues that the State failed to prove that she "knowingly" caused the death of Samuel. In response, the State argues that the issue was not properly preserved for appeal. The State admits that appellant's motion for a directed verdict as to second-degree murder was properly executed but contends that appellant failed to get a ruling on her motion. In response to appellant's directed-verdict motion, the trial court ruled that the State has "made a prima facie case on the murder in the first-degree charge."

Appellant was charged with first-degree murder for "knowingly caus[ing] the death of a person fourteen (14) years of age or younger at the time the murder was committed." Ark. Code Ann. § 5-10-102(a) (Repl. 1997). The jury was instructed on first-degree murder, second-degree murder, manslaughter, and negligent homicide. She was convicted of second-degree murder, having "knowingly" caused the death of Samuel "under circumstances manifesting an extreme indifference to the value of human life." Ark. Code Ann. § 5-10-103(a)(1). In *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999), our supreme court held that "causing a death under circumstances manifesting extreme indifference to the value of human life" is not an element of the charge of first-degree murder under section 5-10-102(a), and that in cases implicating these two code sections, second-degree murder is not a lesser-included offense of first-degree murder. Therefore, the State concludes that the objection was left unresolved and was waived as a point for appeal. *See Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996).

Although the State has offered a technically sound argument, we hold that the trial court's response to appellant's motion for directed verdict, which found sufficient evidence to go forward on the crime charged, adequately preserved her motion on the other charges. Therefore, we will consider the sufficiency of the evidence on appeal.

A motion for directed verdict is a challenge to the sufficiency of the evidence. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another. *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571

(1997). In a challenge to the sufficiency of the evidence, the appellate court reviews the evidence in the light most favorable to the State, and sustains a judgment of conviction if there is substantial evidence to support it. *Abdullah v. State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Circumstantial evidence may provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999).

■ ■ In her argument, appellant offers various purportedly exculpatory facts to be weighed against evidence presented at trial by the State. This court, however, views only the evidence that is most favorable to the jury's verdict and does not weigh it against other conflicting proof favorable to the accused. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994). The jury is permitted to consider "evidence of cover-up as proof of a purposeful mental state." *Steggall v. State*, 340 Ark. 184, 194, 8 S.W.3d 538, 545 (2000); *See also Paige v. State*, 45 Ark. App. 13, 870 S.W.2d 771 (1994) (holding that a defendant's improbable explanations of incriminating circumstances are admissible as proof of guilt).

■ Here, the evidence was sufficient to establish that appellant knowingly caused Samuel's death. Appellant inserted a thermometer and its three-inch cap into Samuel's rectum with such extraordinary force that she must have known that the result could be serious injury or death. The medical testimony of the physician who examined Samuel presented evidence of maltreatment, particularly his description of the blunt force required to tear the child's bowel, and his conclusion that this act was "not an accidental happenstance." The autopsy studies indicated that the life-threatening injury occurred six to twenty-four hours prior to Samuel's death, during the time in which appellant was the only care-giver of the child, and she admitted that Samuel had not left her sight during this time period. The medical examiner further testified that peritonitis is not necessarily fatal; therefore, appellant's refusal to seek medical attention after Samuel began a steady decline in health is further evidence that she manifested an extreme indifference to the value of Samuel's life. Finally, appellant's statements that she had not used a rectal thermometer on Samuel and that she misplaced her rectal thermometer months before the incident are improbable explanations of incriminating circumstances and are contrary to the physical evidence and testimony presented by the State at trial.

■ ■ According to Arkansas Code Annotated § 5-2-202 (Repl. 1993), a person acts knowingly with respect to a result of his

conduct when he is aware that it is practically certain that his conduct will cause such a result. *Ladwig v. State,* 328 Ark. 241, 943 S.W.2d 571 (1997). A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *See, e.g., Goff v. State,* 329 Ark. 513, 953 S.W.2d 38 (1997); *Davis v. State,* 325 Ark. 96, 925 S.W.2d 768 (1996). The evidence was sufficient to show that appellant forcefully inserted an object into Samuel's rectum knowing that the result could be serious injury or death. Therefore, the motion for directed verdict was properly denied.

*III. Rule 404(b)*

Appellant next argues that the trial court erred in its denial of her motion in limine, based on Ark. R. Evid. 404(b), to exclude from evidence an allegation of abuse made against appellant in October of 1999. The trial court allowed testimony from Detective Shawn Juhl of the Fayetteville Police Department that he had investigated a battery committed against a three-year-old child, Chelsea Sams. The battery consisted of several bruises on the child's buttocks and "a mark that looked like it had been made with something other than a hand." Detective Juhl testified that after interviewing the child and the child's grandmother he concluded that appellant had committed the battery. Appellant denied the allegation. On November 22, 1999, Juhl sent the file to the Fayetteville prosecutor's office; however, contrary to Juhl's recommendation, no warrant was issued. After Juhl's testimony, the trial court issued the appropriate 404(b) instruction:

> Members of the jury, you are instructed that evidence of other alleged crimes, wrongs or acts of Scharel Ann Burley may not be considered to prove the character of Scharel Ann Burley in order to show that she acted in conformity therewith. This evidence is not to be considered to establish a particular trait of character that she may have nor is it to be considered to show that she acted similarly or accordingly on the day of the incident. The evidence is merely offered as evidence of motive, opportunity, intent, knowledge, absence of mistake or accident. Whether any other alleged crimes or wrongs or acts have been committed is for you to determine.

Evidence offered under Rule 404(b) must be independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more

or less probable than it would be without the evidence. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). Arkansas Rule of Evidence 404(b) states:

> *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The list of exceptions to inadmissibility in Rule 404(b) is not an exclusive list, but instead, it is representative of the types of circumstances under which evidence of other crimes or wrongs or acts would be relevant and admissible. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001). The test for admission of prior bad acts under Rule 404(b) is whether the evidence offered has independent relevance to a fact of consequence in the case. *Id.* Also, there must be a degree of similarity between the prior bad act and the present crime. To be probative, the prior criminal act must require an intent similar to that required by the charged crime. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). Finally, if the evidence of a prior bad act is independently relevant to the main issue, rather than merely to prove that the defendant is a criminal, then the evidence of that conduct may be admissible with a cautionary instruction by the court. *Regalado v. State*, 331 Ark. 326, 961 S.W.2d 739 (1998).

Appellant asserts that the detective's testimony should not have been admitted into evidence because (1) there is no evidence that the abuse described was a "prior bad act" of appellant, (2) the State failed to prove that the evidence was used to prove anything other than the bad character of appellant, (3) the evidence is not independently relevant, and (4) the danger of unfair prejudice substantially outweighs the probative value of the evidence. The State concedes that evidence of appellant's prior misconduct would be inadmissible to show only that she was a bad person who should be convicted, but it contends that was not the purposes of the questioning. The conduct inquired about was admissible, the State contends, under Rule 404(b) as proof of motive, intent, preparation, or plan. Specifically, the State argues that appellant failed to seek proper medical attention for Samuel because she was the subject of an investigation of child abuse perpetrated on another child, and that seeking medical care for Samuel could result in more allegations of abuse.

▉ First, we consider if the described abuse allegation was indeed a "bad act." In this case the only testimony, or tangible evidence, of a prior bad act was an opinion offered by Detective Juhl. There is nothing here but an unsubstantiated allegation. Rule 404(b) cannot apply without proof of an actual act being committed. *See Harper v. State*, 1 Ark. App. 190, 614 S.W.2d 237 (1981). An investigator's conclusion of wrongdoing, without anything more, does not amount to an "act" for purposes of Rule 404(b). We, therefore, hold that the trial court's decision to allow Detective Juhl's testimony regarding his investigation of appellant was improper. We cannot say that this testimony had no prejudicial effect. *McIntosh v. State*, 262 Ark. 7, 552 S.W.2d 649 (1977).

▉ Second, we are not convinced that the evidence of appellant's alleged misconduct, even if it amounted to an act, is relevant. Rule 404(b) requires a degree of similarity between the prior bad act and the present crime. *Williams, supra*. The current case involves a puncture wound to a child's bowel, and the allegations of prior misconduct involved a single incident of bruising a child's buttocks. If the evidence does not have a tendency to make the existence of any consequential fact more or less probable than it would be without the evidence, the evidence is not admissible under Rule 404(b). *McGehee, supra*. We fail to see a relationship between the two events that is strong enough to justify an independent relevance for admission.

▉ Third, even if the evidence were relevant, it must be admissible under Rule 403, which requires that its probative value be substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403. Evidence of an *alleged* prior bad act has little or no probative value; therefore, any resulting unfair prejudice, tips the balance. The evidence revealed by Detective Juhl's testimony was clearly more prejudicial than probative. We, therefore, conclude that the trial judge abused his discretion by admitting the testimony into evidence. *Mixon v. State*, 330 Ark. 171, 954 S.W.2d 214 (1997).

Reversed and remanded for a new trial.

PITTMAN and NEAL, JJ., agree.