Scharel Ann BURLEY *v.* STATE of Arkansas

CR 01–1240                                           73 S.W.3d 600

Supreme Court of Arkansas
Opinion delivered May 2, 2002

424

*Jeffrey W. Hatfield*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. The appellant in this case, Scharel Ann Burley, appeals from a Washington County Circuit Court order denying her motion for directed verdict and denying her motion in limine. Burley raises two points on appeal: (1) the evidence introduced at trial was insufficient to support the jury's verdict of guilty on the charge of murder in the second-degree; and (2) the trial court abused its discretion in denying defendant's motion in limine to exclude from evidence an investigation of alleged child abuse by the defendant against another child. We affirm.[1]

On Wednesday, January 12, 2000, Central Emergency Medical Services responded to a 911 call from Prairie Grove, Arkansas. The paramedics arrived at the caller's home at 8:48 p.m. to assist a

---

[1] *Reporter's note: See Burley v. State*, 75 Ark. App. 311, 57 S.W.3d 746 (2001).

baby in distress. Moments after the paramedics arrived, the baby stopped breathing. The child was identified as eighteen-month-old Samuel Sams. Samuel had been vomiting clear liquid and green mucus, and was breathing at a rate of ten breaths per minute. The paramedics began CPR and transported Samuel to Washington Regional Medical Center. He was pronounced dead at 10:47 p.m.

Dr. Charles Kokes, a medical examiner with the State Crime Lab, performed the autopsy. The cause of death was determined to be acute peritonitis caused by a tear in the child's bowel. The tear was caused by an end-cap of a thermometer, measuring about three inches in length. The end-cap was still inside Samuel at the time of the autopsy. Dr. Kokes testified that peritonitis is associated with severe pain, but is not necessarily fatal. He further testified that the perforation of the rectal wall occurred six to twenty-four hours prior to Samuel's death. Dr. Kokes opined that the force necessary to cause this type of tear would be roughly equivalent to pushing the eraser end of a pencil through six sheets of Saran Wrap. The medical examiner ruled Samuel's death a homicide, and concluded that the perforation of his rectum wall by a thermometer cap was "not an accidental happenstance."

Burley was the child's caregiver at the time that the emergency call was made. Samuel had been in her care since Saturday, January 8, 2000. She told investigators that Samuel had a fever when she picked him up from his mother's home on Saturday and that she had taken his temperature each day he had been in her care using a digital ear thermometer. Burley denied ever using a rectal thermometer on Samuel and stated that although she did own a rectal thermometer, she had not seen it for several months. She also told the investigator that she had called the emergency room when Samuel's condition began to deteriorate and was told that Samuel would be fine as long as she could keep him hydrated. During the course of the investigation, Burley admitted that Samuel had not left her sight while he was in her charge, and that she was his only caregiver during the time period in question.

A search of a trash can in Burley's home produced a clear piece of a thermometer cover that matched the piece found inside

of Samuel's abdominal cavity. The police also found a rectal thermometer on a bookshelf in Burley's apartment. Paul Williams testified that around Thanksgiving he gave appellant a rectal thermometer that he received during a promotional event held by his employer, Wal-Mart. He further testified that he had seen Samuel the evening prior to his death and that there "was nothing wrong with him." However, Williams also testified that the next morning he observed Samuel in a crib and he "was just laying there like he was dead."

Brenda Westphall testified that her son had been in Burley's care on Sunday, January 9, 2000. She further stated that she borrowed a rectal thermometer from Burley on Sunday when she came to pick up her son. After taking her son's temperature, she left the thermometer, with both pieces of the protective cover intact, on a night stand in Burley's apartment. According to Westphall's testimony, the following day she noticed that the thermometer had been moved from the night stand. Two other witnesses testified that they had observed appellant taking Samuel's temperature using a rectal thermometer. Finally, Burley's telephone records were subpoenaed and the police found no evidence that Burley had made a call to the emergency room to seek advice on Samuel's care.

On February 18, 2000, Burley was first charged with second-degree murder; however, the information was later amended to first-degree murder. A jury trial was held on August 8-9, 2000. A jury found Burley guilty of murder in the second degree, sentenced her to eighteen years' imprisonment in the Arkansas Department of Correction, and imposed a $12,000 fine.

### Sufficiency of the Evidence

First, Burley challenges the sufficiency of the evidence to support the jury verdict of second-degree murder. Specifically, Burley argues that the State failed to prove that she "knowingly" caused the death of the victim. In response, the State argues that the issue was not properly preserved for appeal. Burley did move for a directed verdict at the conclusion of the State's case and again at the close of all the evidence in connection with the charge of

second-degree murder. The State admits that Burley's motion for a directed verdict as to second-degree murder was properly executed, but contends that appellant failed to get a ruling on her motion. In denying Burley's directed-verdict motions, the trial court ruled only that the State has made a prima facie case on the murder in the first-degree charge. We hold that the motion is deemed denied pursuant to Arkansas Rule of Criminal Procedure 33.1(c), and we affirm.

This court has held numerous times that the burden of obtaining a ruling is on the movant, and objections and questions left unresolved are waived and may not be relied upon on appeal. *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996); *Williams v. State*, 289 Ark. 69, 709 S.W.2d 80 (1986). In *Donald v. State*, 310 Ark. 197, 833 S.W.2d 770 (1992), a case very similar to this one, the appellant moved for a directed verdict at the close of the State's case, and the motion was denied. Donald renewed his motion at the close of all the evidence, as required by Ark. R. Crim. P. 36.21(b), but he failed to obtain a ruling from the court. In that decision, we held that, the burden of obtaining a ruling is on the movant, and the failure to secure a ruling constitutes a waiver, precluding its consideration on appeal. *Id.* at 198, 833 S.W.2d at 771 (citations omitted).

However, according to Rule 33.1(c) of the Arkansas Rules of Criminal Procedure:

> The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. *If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of*

> obtaining appellate review on the question of the sufficiency of the evidence.

(Emphasis added.)  Ark. R. Crim P. 33.1(c).

Here, Burley did move for a directed verdict at the close of the State's case-in-chief and, again, at the close of the evidence.  The trial court ruled that the State had made a prima facie case for murder in the first-degree.  The burden of obtaining a ruling on the second-degree murder motion for directed verdict was on Burley.  Therefore, the motion was deemed denied for purposes of obtaining appellate review on the question of sufficiency of the evidence with regards to the second-degree murder charge. · Accordingly, this point is preserved for appellate review.

It is well settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence.  *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001) (citing *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995)).  The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Smith, supra.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id.* Only evidence supporting the verdict will be considered. *Smith, supra.*

Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999).  Such a determination is a question of fact for the fact-finder to determine. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993).  The credibility of witnesses is an issue for the jury and not the court. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001).  The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* We will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to speculation and conjecture in reaching its verdict. *Phillips, supra.* When we review

a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002).

Burley was charged with first-degree murder for "knowingly caus[ing] the death of a person fourteen (14) years of age or younger at the time the murder was committed." Ark. Code Ann. § 5-10-102(a)(3) (Repl. 1997). The jury was instructed on first-degree murder, second-degree murder, manslaughter, and negligent homicide. She was convicted by a jury of second-degree murder, having "knowingly" caused the death of the victim "under circumstances manifesting an extreme indifference to the value of human life." Ark. Code Ann. § 5-10-103(a)(1).

In her argument, Burley offers various purportedly exculpatory facts to be weighed against evidence presented at trial by the State. This court, however, views only the evidence that is most favorable to the jury's verdict and does not weigh it against other conflicting proof favorable to the accused. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994). The jury is permitted to consider evidence of cover-up as proof of a purposeful mental state. *Steggall v. State*, 340 Ark. 184, 194, 8 S.W.3d 538, 545 (2000).

Here, the evidence was sufficient to establish that Burley knowingly caused the minor victim's death. Burley inserted a thermometer and its three-inch cap into the victim's rectum with such extraordinary force that she must have known that the result could be serious injury or death. The medical testimony of the physician who examined the victim presented evidence of maltreatment, particularly his description of the blunt force required to tear the child's bowel, and his conclusion that this act was "not an accidental happenstance." The autopsy studies indicated that the life-threatening injury occurred six to twenty-four hours prior to the victim's death, during the time in which Burley was the only caregiver of the child, and she admitted that the minor victim had not left her sight during this time period. The medical examiner further testified that peritonitis is not necessarily fatal; therefore, Burley's refusal to seek medical attention after the victim began a steady decline in health is further evidence that she mani-

fested an extreme indifference to the value of the minor victim's life. Finally, Burley's statements that she had not used a rectal thermometer on the minor victim and that she misplaced her rectal thermometer months before the incident are improbable explanations of incriminating circumstances and are contrary to the physical evidence and testimony presented by the State at trial.

■■■■■ According to Arkansas Code Annotated § 5-2-202 (Repl. 1993), a person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result. *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997). A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). The evidence was sufficient to show that Burley forcefully inserted an object into the minor victim's rectum knowing that the result could be serious injury or death. Therefore, the trial court is affirmed.

*Rule 404(b)*

■■■ Burley next argues that the trial court erred by admitting evidence of a police investigation into an allegation that Burley abused a child in her care approximately three months prior to the victim's death. However, it is well settled that the admission or rejection of evidence under Arkansas Rule of Evidence 404(b) is left to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *Warner v. State*, 59 Ark. 155, 954 S.W.2d 298(1998). No abuse occurred here, therefore we affirm the trial court.

On October 18, 1999, Fayetteville Detective Shawn Juhl began an investigation based upon a patrol officer's report of a possible child-abuse case against Burley involving the victim's sister, three-year-old sister Chelsea Sams. The abuse centered on the fact that Chelsea had several bruises on her buttocks along with a mark that appeared to have been made with something other than a hand. After interviewing the child's grandmother and the child herself, Detective Juhl developed Burley as the suspect. Although

Detective Juhl forwarded the results of his investigation to the prosecutor's office with a recommendation that charges be filed against Burley, no charges were ever filed. The trial court denied Burley's motion to exclude this testimony, but granted her request to give a cautionary instruction concerning the relevance of this evidence.

Appellant Burley argues that the State relies on its theory of the case, and not the facts of the case to argue the admissibility of the unsubstantiated allegation of child abuse. Burley contends that the testimony elicited at trial indicates that some time did elapse between the time the thermometer punctured the victim's rectum and the time that the paramedics were called. However, Burley argues that there are absolutely no facts to support the State's theory that the delay was due to Ms. Burley's fear that she would be exposed to criminal liability.

Burley contends that "buying into the State's argument can easily lead this Court down a slippery slope where evidence is admissible based on counsel's theories of the case and not the facts." Burley asserts that it is not plausible that an unsubstantiated allegation of a completely separate event, remote in time and not similar in nature, is relevant to any issue in this case. At trial, the State offered this evidence to show the jury that since Burley had been investigated before for child abuse, hence she is a person who probably committed the crime in the present action. Burley argues that this evidence is clearly in violation of Rules 401, 403, and 404 of the Arkansas Rules of Evidence.

Burley argues three independent reasons that this evidence should not have been admitted. First, Rule 404(b) states that "crimes, wrongs, or acts," which are commonly and collectively referred to as "bad acts," may be admissible to prove motive, opportunity, intent, etc., but there was no "act" here. We agree, and determine that the unsubstantiated allegation does not amount to a "crime, wrong, or act" under Rule 404(b), and therefore it should not have been allowed. Second, even if an unsubstantiated allegation was a "bad act," the testimony does not prove any purpose such as intent, plan, motive, etc., set forth in 404(b). Finally, even if the evidence did satisfy the elements of

404(b), it still cannot pass the balancing test set forth in Rule 403. We disagree.

The State's theory of the case was that Burley intentionally forced a thermometer cap through the minor victim's rectum into his abdominal cavity and, instead of seeking medical care when obvious signs of distress appeared, failed to take him to the hospital out of fear that she would expose herself to further criminal liability and become a prime suspect in the minor victim's murder. To that end, the State introduced evidence that Burley had been investigated just months before for abusing the victim's sister while in her care and that she was told by the police that a warrant would be issued for her arrest.

If the introduction of testimony of other crimes, wrongs, or acts is independently relevant to the main issue, rather than merely to prove that the defendant is a criminal, then evidence of that conduct may be admissible with a cautionary instruction by the court. *Regalado v. State*, 331 Ark. 326, 961 S.W.2d 739 (1998). Thus, if the evidence of another crime, wrong, or act is relevant to show that the offense of which the appellant is accused, it will not be excluded. *Lindsey v. State*, 319 Ark. 132, 890 S.W.2d 584 (1994)(plurality opinion).

First, there is no requirement under 404(b) that there must be a "bad act" as a prerequisite for admissibility. This Court has upheld the admission of evidence under 404(b) to prove motive based on the fact that the defendant was mainly a white supremacist sympathizer. *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986). Moreover, even assuming that the State's proof does not amount to a "bad act" under 404(b), the evidence is admissible as simply relevant evidence of Burley's motive. The testimony offered by Detective Juhl was that he was going to arrest Burley. Therefore, Burley's motive for not reporting the incident with the minor victim in this case was her fear of arrest. This motive evidence was independently relevant to explain why Burley did not seek medical care sooner when faced with a child exhibiting obvious signals of deteriorating health. Moreover, the evidence did not unfairly prejudice Burley because the child-abuse allegation

occurred near the time of the minor victim's death and involved a child in Burley's care.

However, Detective Juhl did not actually see the bruises on the child. He prepared his investigation from various statements and the patrol officers report. Detective Juhl testified at trial concerning his investigation into Chelsea's suspected child-abuse case. During his testimony, he testified as to statements made by Chelshea and her grandmother. Burley did not object to the hearsay testimony given until after the testimony was given.

Second, this proof was offered by the State to establish Burley's motive for failing to seek medical attention for the victim. Furthermore, this Court has frequently upheld the admissibility of proof that defendants commit other crimes not similar to the present crime in order to prove motive. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998) (upholding the admissibility of evidence that defendant used cocaine to prove motive for murder under 404(b)).

Burley admitted that she was the sole caregiver for the twenty-four hours prior to when the child was admitted to the hospital. She admitted that the minor victim never left her sight. Further, Burley knew that she had an ongoing criminal investigation, and she knew that if anything else were to happen she could face possible criminal prosecution. Therefore, because of her fear of arrest she did not take the victim to the hospital or seek medical treatment.

Finally, the evidence passed the Rule 403 balancing test. This court has repeatedly stated that when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *Ward v. State*, 338 Ark. 619, 1 S.W.3d 6 (1999). Moreover, the jury was given a cautionary instruction regarding the evidence. As this Court affords great deference to a trial court's ruling on relevancy and prejudicial impact, *Lee v. State*, 327 Ark. 697, 942 S.W.2d 231 (1997), the trial court here did not abuse its discretion by admitting this evidence of Burley's motive.

The trial court in this case made the determination to allow the previous child-abuse investigation into evidence. However, the trial court also gave a cautionary instruction to the jury regarding the evidence. Therefore, the exercise of the discretion of the trial judge should be affirmed.

Affirmed.