Roshonda SMITH *v.* STATE of Arkansas

CA CR 04-200                                        205 S.W.3d 173

Court of Appeals of Arkansas
Opinion delivered March 16, 2005

*Harvey Harris* and *Jon Johnson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Roshonda Smith appeals her conviction for first-degree battery and raises two points. First, she argues that the trial court erred in admitting evidence of a prior bad act concerning the same victim. Second, she argues that the trial court erred in denying her motion for a mistrial after it denied her the use of all of her peremptory jury strikes. We affirm on both points.

Because appellant does not challenge the sufficiency of the evidence supporting her conviction, only a brief recitation of the facts related to the issues on appeal is necessary. Appellant worked in a day-care center at the Little Rock Air Force Base. She was accused of injuring three-and-one-half-month-old Christian Coghill on April 19, 2002. The medical professionals concluded that Christian's injuries were caused by "shaken baby syndrome," which caused bleeding in the blood vessels in his brain that resulted

in a large blood clot, known as a subdural hemotoma.[1] Appellant told the police that Christian's injury could have occurred when he slipped out of her grasp, fell into his playpen, and landed on his stomach. When he later awoke, she noticed that he could not open his eyes. After trying unsuccessfully to rouse Christian, appellant called an ambulance. She was subsequently charged with first-degree battery.

Prior to trial, appellant filed a motion for the production of evidence to be obtained under Arkansas Rule of Evidence 404(b), which prevents introduction of evidence of other crimes, wrongs, or acts of the accused to show the "bad character" of a defendant. The evidence of appellant's prior bad acts came in the form of testimony from Yolanda Green, an acquaintance of appellant's who is also a day-care worker. During the pre-trial hearing, Green testified concerning an incident, before the event that led to the charge in this case, in which appellant repeatedly told Christian to "shut up" and forcefully put a bottle in the infant's mouth. After Green testified, the trial court denied appellant's motion to limit Green's testimony.

During the trial when it became apparent that Green was about to testify regarding the prior incident, appellant renewed the argument she raised during pre-trial. The trial court issued an appropriate 404(b) limiting instruction, warning the jury that Green's testimony could not be used to prove appellant's character, but could be used only as evidence of motive, opportunity, intent, or absence of mistake or accident. Green thereafter testified essentially as stated above.

During *voir dire*, the trial court mistakenly prevented appellant from using all of her peremptory strikes because it erroneously assigned two of the State's strikes to her. However, no objection was made when the trial court made its mistake and counsel for appellant accepted the jury as empaneled. The next day, when the mistake was brought to the attention of the trial court, it allowed appellant to remove one of the jurors (Kimbrell) from the main jury panel. Kimbrell then became an alternate juror, and appellant was allowed to strike another alternate juror (Marlatt), leaving two

---

[1] Dr. Kanwaljeek Singh Anad, a pediatric doctor who treated Christian, testified that shaken baby syndrome may result in severe internal injuries without evidence of any external injuries, and may be the result of an infant being shaken violently or being slammed down onto a bed, crib, sofa, or other soft surface.

alternate jurors on the panel (Kimbrell and Griffin). The court then moved alternate juror Griffin onto the main jury panel. The jury convicted appellant of first-degree battery. She was sentenced to fifteen years in the Arkansas Department of Correction and fined $7500.

## I. Prior Bad Acts

Appellant first argues that the trial court erred in allowing Green to testify regarding the incident when appellant allegedly lost her temper with Christian. Green lives at the Air Force Base in Jacksonville. According to Green, the incident occurred at her house, approximately two weeks before the one that led to the instant appeal. She testified that appellant came to her house with Christian in the car and parked in Green's driveway. Christian, who was in the back seat in a car seat, began crying. According to Green, appellant repeatedly told Christian to "shut up." Finally, appellant got out of the driver's seat, still telling the infant to "shut up," and forced a bottle into his mouth.

Appellant maintains that Green's testimony was inadmissible pursuant to Arkansas Rule of Evidence 404(b), which states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We will not reverse a trial court's ruling regarding the admission of evidence under Rule 404(b) absent an abuse of discretion. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). Appellant argues that it was an abuse of discretion for the trial court to admit evidence that she forcefully put a bottle into the victim's mouth two weeks before the April 19 incident because the prior incident lacked the required degree of similarity to the alleged conduct that led to the first-degree battery charge. She also argues that even if Green's testimony was properly admitted under Rule 404(b), it should have been excluded under Arkansas Rule of Evidence 403 because its probative value was outweighed by the risk of unfair prejudice. *McGhee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). Citing this court's opinion in *Burley v. State*, 75 Ark. App. 311, 57 S.W.3d 746 (2001), she asserts that "evidence of an alleged prior bad act has little or no probative value."

We disagree and hold that Green's testimony was admissible under Rule 404(b) and Rule 403. Under Rule 404(b), evidence of a prior bad act that is independently relevant to the main issue, rather than merely relevant to prove the defendant is a criminal, may be admissible if the trial court issues a proper limiting instruction. *Regaldo v. State*, 331 Ark. 326, 961 S.W.2d 739 (1998). Appellant was convicted of first-degree battery under Arkansas Code Annotated § 5-13-201(a)(4)(A) (Repl. 1997), which provides that a person commits first-degree battery if he causes serious physical injury to another person under circumstances manifesting extreme indifference to human life.

The phrase "under circumstances manifesting extreme indifference" under the first-degree battery statute is defined in the nature of a culpable mental state and thus, is akin to the element of "intent" for the proof of which evidence of other offenses is admissible under Rule 404(b). *State v. Vowell*, 276 Ark. 258, 634 S.W.2d 118 (1982). In addition, evidence of physical injuries to children other than the victim is probative of intent and the absence of mistake or accident. *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001). We agree with the State's argument that if evidence of physical injuries to *other* children is admissible under Rule 404(b), then evidence of mistreatment against the *same* child is certainly admissible under that rule.

Moreover, we disagree with appellant's argument that the State failed to show that the prior conduct and the conduct that led to the instant charge had the "required" degree of similarity in order to warrant admission under Rule 404(b). It is true that where the evidence is admitted to show *modus operandi*, the evidence must show that both acts were committed with the same or strikingly similar methodology and the methodology must be so unique that both acts can be attributed to the accused as the perpetrator. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001). However, where the evidence is not used to establish *modus operandi*, the test is stated another way: whether the evidence has independent relevance for establishing motive, intent, etc., under Rule 404(b). *Haire v. State*, 340 Ark. 11, 8 S.W.3d 468 (2000); *Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998).

As the *Johnson* court stated:

> Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but such evidence is admis-

sible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. We have interpreted this rule as permitting the introduction of testimony of other criminal activity if it is "independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court." *We have stressed the requirement that there be a very high degree of similarity between the charged crime and the prior uncharged act. In other terms, we have said that evidence offered under Rule 404(b) must be independently relevant,* thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.

Id. at 680-81, 972 S.W.2d at 939 (citations omitted) (emphasis added). Thus, the issue before us is whether Green's testimony regarding the prior incident was independently relevant to establish any of the allowed exceptions to Rule 404(b). We hold that it was.[2]

Pursuant to these authorities, we hold that Green's testimony was admissible to show appellant's mental state and to show the absence of mistake or accident. Green's testimony establishes that only two weeks before the incident leading to this case, appellant acted in a forceful and arguably insensitive manner toward an infant who had been entrusted to her care, the *same* infant who was injured in the instant case. Thus, Green's testimony tended to show that appellant manifested indifference to Christian's well-being.

█ The *Branstetter* rationale is even more compelling here, where the prior misconduct was directed toward the *same* victim

---

[2] Appellant's reliance upon our holding in *Burley v. State, supra,* is misplaced because our decision in that case was subsequently overturned by the Arkansas Supreme Court in *Burley v. State,* 348 Ark. 422, 73 S.W.3d 600 (2002) (to which appellant did not cite). The supreme court in that case ruled that an unsubstantiated allegation of child abuse, as evidenced by a police officer's recommendation to prosecute, was not a prior bad act under Rule 404(b). *Id.* However, the *Burley* court noted that Rule 404(b) does not require the occurrence of a "bad" act as a prerequisite for admissibility, because the rule merely refers to "crimes, wrongs, or acts" which it stated are collectively and somewhat inaccurately referred to as prior *bad* acts. *Id.* Thus, the *Burley* court ruled that even if the evidence of prior abuse was not a "bad act" it was admissible as evidence of the defendant's motive in not reporting the victim's subsequent injury resulting from abuse: fear of arrest. *Id.*

only two weeks before the instant misconduct. Further, because appellant claimed that she accidentally dropped Christian, the trier-of-fact was entitled to know about the prior incident because it tended to contradict her claim that Christian's injuries were the result of an accident. *McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901(2003)(holding evidence of the prior conviction for domestic battery was properly introduced under Rule 404(b) to show absence of mistake or accident where the defendant was accused of first-degree murder, and claimed that the act of firing a gun was an accident).

We further hold that Green's testimony was admissible under Rule 403, which allows a trial court to exclude relevant evidence if its probative value is outweighed by, *inter alia*, the danger of unfair prejudice.[3] We will not reverse a trial court's ruling on the admission of evidence under Rule 403 absent an abuse of discretion. *Branstetter v. State*, *supra*. Here, there was no abuse of discretion because, first, the testimony had probative value in that it tended to negate appellant's assertion that she accidentally dropped Christian.

Second, appellant was not prejudiced under Rule 403 because of the short time frame in which the two incidents occurred. *Burley v. State*, 348 Ark. 422, *supra* (holding that the defendant was not prejudiced by the admission of evidence that an officer conducted a child abuse investigation against the defendant concerning the victim's sister approximately three months prior to the criminal conduct in that case). Appellant began caring for Christian on March 4, 2002; the injury occurred on April 19, 2002. According to Green's testimony, the prior incident occurred

---

[3] The State maintains that Appellant's Rule 403 argument is barred because she did not cite to Rule 403 in her written motion, nor expressly argued that the danger of unfair prejudice outweighed the probative value of Green's testimony. We disagree. While appellant could have been more helpful in expressly citing to Rule 403 in her motion, she cited to *Price v. State*, 268 Ark. 535, 596 S.W.2d 598 (1988), for the proposition that testimony concerning prior bad acts is admissible only if it is independently relevant and the probative value outweighs the dangers of such unfair prejudice. The *Price* court applied Rule 403 and performed the balancing test required by Rule 403. Thus, appellant raised the Rule 403 issue in her written motion, and it is obvious that the trial court considered the requirements of Rule 403 in denying her motion. Further, at trial, before Green testified as to the prior incident, appellant moved to renew the motion she made during the pretrial hearing. On these facts, she has preserved her Rule 403 argument for this court's review.

approximately two weeks before the April 19th incident. The instant facts are even more compelling to support a finding that appellant was not prejudiced. The two-week time period involved here is far shorter than the nearly three-month period between incidents in *Burley*. The conduct here involves the *same* victim. Accordingly, we hold that the trial court did not err in admitting Green's testimony concerning appellant's prior misconduct toward the victim in this case.

## II. Motion for Mistrial

Appellant further argues that the trial court erred in denying her motion for a mistrial after she was denied the use of some of her peremptory challenges, in violation of Arkansas Code Annotated § 16-33-305(b) (Repl. 1999). She maintains that as a result of this violation, she was denied the right to a fair and impartial trial under the Sixth Amendment of the United States Constitution.

It is undisputed that appellant was entitled to exercise eight peremptory strikes pursuant to § 16-33-305(b) and that she was not allowed to exercise all of her peremptory strikes during *voir dire* because the trial court mistakenly assigned two of the State's strikes to her. Appellant peremptorily struck jurors Skigel, Tanner, Ballard, Carey, Bailey, and Tinsley. When she then attempted to use her seventh strike to remove Kimbrell, the twelfth juror seated, the trial court, in error, instructed, "Don't record that strike." Appellant's counsel apparently was not aware that appellant had two strikes remaining; she neither objected to the thwarted attempt to strike Kimbrell, nor objected to the composition of the jury before the jury was sworn.

The four names for alternate juror selection were drawn in the following order: Sheridan, Jones, Marlatt, and Griffin. The parties were instructed that they each could exercise one strike with regard to the alternate jurors. The State struck Jones and appellant struck Sheridan, leaving Marlatt and Griffin as alternate jurors. The court then asked if the jury was good for the State and for appellant; both parties indicated that the jury was good. The jury was empaneled and the trial began.

Appellant and the State brought the mistake to the attention of the trial court at the beginning of the second day of trial. Appellant's counsel argued below that the jury panel would have

been different, because she would have stricken Kimbrell, Sheridan, and Marlatt. The State's attorney argued initially that they could not proceed and that appellant had been prejudiced because she attempted to strike juror Kimbrell, who remained on the jury, and because she would have stricken Marlatt, who remained as an alternate.

After much discussion, the trial court allowed appellant to strike Marlatt, an alternate juror. She was also allowed to "strike" Kimbrell (the same juror she attempted to strike the day before) from the main jury panel. Kimbrell was replaced with one of the alternate jurors, Griffin; however, Kimbrell remained as the sole alternate juror. The trial court concluded that appellant was not prejudiced because she was able, in essence, to exercise her peremptory strikes in the same order as she would have had she been allowed to strike them the day before. Thus, the State asserted that appellant "is getting every juror that she would have gotten anyway." The State reversed its earlier position, and agreed with the trial court. The court denied appellant's motion for a mistrial, concluding that she had "technically" exercised nine strikes, including the alternate juror strike.

Whether to grant a mistrial is within the sound discretion of the trial court; we will not overturn the denial of a motion for a mistrial absent an abuse of discretion. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000). An abuse of discretion occurs when the trial court makes a judgment call that is arbitrary and groundless. *Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991). In addition, a mistrial is a drastic remedy to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial and when the error cannot be cured by an instruction to the jury. *Walker v. State*, 353 Ark. 12, 110 S.W.3d (2003). We hold that the trial court did not err in denying appellant's motion for a mistrial.

■ The State argues that appellant should be precluded from challenging the composition of the jury on appeal because she did not specifically cite to § 16-33-305 and to the Sixth Amendment below, and because she originally accepted the jury panel without objection. However, where the specific ground for the objection is clear from the context and a proper objection was raised, the issue is sufficiently preserved for appellate review. Ark. R. Evid. 103(a)(1); *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999). Here, the basis for appellant's motion was apparent from the context, from the State's assertions, and from her argument: the fact that she had been denied the opportunity to exercise all of

her peremptory rights altered the jury panel because she would have stricken Kimbrell, Sheridan, and Marlett. Although appellant did not specifically cite to § 16-33-305, it is apparent that the trial court was properly apprised of the nature of this objection, which obviously encompassed both her right to exercise all of her peremptory challenges under § 16-33-305(b) and her right to a fair and impartial jury under the Sixth Amendment of the United States Constitution. Thus, we reject the State's argument that appellant did not assert these statutory and constitutional rights below.

Nonetheless, we hold that appellant's arguments are barred because she did not object to the jury panel at the time it was sworn. Generally, in order to preserve an issue for appeal, a defendant must object at the first opportunity. *Mezquita v. State,* 354 Ark. 433, 125 S.W.3d 161 (2003). The same is true for objections regarding irregularities in the composition of a jury. In order to preserve objections regarding any irregularities affecting the selection or summoning of the jury panel, a timely objection must be made at the earliest opportunity in order to preserve it for appeal. *Gidron v. State,* 316 Ark. 352, 872 S.W.2d 64 (1994) (holding that defendant in second-degree murder case waived any argument regarding irregularity of the jury selection process where he first raised objections "in the middle of the State's case, after the first day of testimony").

Here, appellant did not raise the objection at the earliest opportunity — the earliest opportunity would have been at the point when the trial court erroneously prevented her from striking Juror Kimbrell. The *latest* "earliest opportunity" would have been any time before the jury was sworn. By going to trial without objecting to the manner in which the jury was impaneled, appellant must be deemed to have waived any irregularity in the order of selecting the jury. *Id.* Her belated objection the second day of the trial was too late, because the jury had already been sworn. Accordingly, appellant's arguments regarding the denial of her motion for a mistrial are procedurally barred.[4]

---

[4] Appellant also asserts that the trial court erred in denying her motion for a mistrial because the State here was not required to exercise its challenges first, as is required under Arkansas Code Annotated § 16-33-303(c) (Repl. 1999). However, this argument was not presented to the trial court. Unlike appellant's arguments concerning § 16-33-305 and the

■ Finally, even if we reached the merits of appellant's argument we would affirm because appellant cannot demonstrate that she was prejudiced. When a defendant argues that he was forced to accept a juror that he would have refused, he must show that the trial court would have excused the juror for cause, that the defendant had exhausted his peremptory challenges, and that he demonstrated prejudice in that he was forced to accept a juror against his wishes. *Noel v. State*, 28 Ark. App. 158, 771 S.W.2d 325 (1989).[5] Appellant has not shown that she was forced to accept any juror against her wishes or that any such juror would have been dismissed for cause. Even if she had argued that she was forced to accept Juror Kimbrell, we would be hard-pressed to find that she was prejudiced where Kimbrell did not participate in reaching the verdict.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.

---

Sixth Amendment, her argument concerning § 16-33-303(c) was not so apparent that the trial court would have been aware of it in the absence of a specific objection. Accordingly, we do not reach the merits of this argument.

[5] Appellant relies on *Swain v. Alabama*, 380 U.S. 202 (1965), in asserting that she was not required to demonstrate prejudice. The *Swain* court noted that while there is nothing in the Constitution which requires Congress or states to grant peremptory challenges, the right to exercise a peremptory challenge is one of most important of rights secured to accused, and the denial or impairment of such right is reversible error, even without showing of prejudice. However, we did not find, and appellant does not cite, any Arkansas law interpreting *Swain* to *require* us to reverse in the absence of prejudice. The Arkansas Supreme Court has, in post-*Swain* cases, required a defendant to show that he was prejudiced by being forced to accept a juror to which he would have objected. *Hobbs v State*, 277 Ark. 271, 241 S.W.2d 9 (1982); *Noel v. State, supra.*