PHILLIP T. WHITEAKER, Judge
A Garland County Circuit Court jury found Kenny Lemont Danner guilty of first-degree murder in the death of Mark Turner. Danner appeals his conviction and argues that the evidence was circumstantial and was therefore not sufficient for a finding of guilt beyond a reasonable doubt.[1] Because substantial evidence supports a conviction, we affirm.
In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. Cluck v. State , 365 Ark. 166, 226 S.W.3d 780 (2006). We will *547 affirm a conviction if substantial evidence exists to support it. Id. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. Id. When a theory of accomplice liability is implicated, we affirm a sufficiency-of-the-evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. Cook v. State , 350 Ark. 398, 86 S.W.3d 916 (2002).
Taking the evidence in the light most favorable to the State, as we must do, the following evidence substantially supports Danner's conviction. On May 29, 2016, Mark Turner failed to show up for work. He was later found dead in his apartment. Law enforcement was notified.
Law enforcement responded to Turner's apartment to investigate his death. Turner's fatal injuries appeared to have been inflicted by the use of three different weapons: possibly a hammer, a knife, and a phillips-head screwdriver. He had suffered multiple blunt-force and sharp-force injuries.[2] The apartment was processed for evidence, and certain items were collected, including blood samples and a piece of carpet containing a bloody shoe print.
The police eventually focused on Danner as a suspect in Turner's murder. The investigation into Turner's death revealed that Danner, his brother Korean, James Marshall, and Alvin Smith had gathered at Turner's apartment in the early morning hours of May 28, 2016. Turner, Danner, Korean, and Smith began drinking, smoking marijuana, and shooting dice, while Marshall sat on the couch watching videos and texting on his phone. Turner had a backpack with an extra set of clothes, some marijuana, and a gun. He also had a large amount of money from an insurance settlement. He was betting on the dice game with some of the money but did not have it all out. Turner generally carried the money in his wallet or in the backpack.[3]
Smith left the apartment at approximately 3:45 a.m. Marshall left five or ten minutes later, leaving Danner and Korean with Turner. At approximately 5:00 a.m., Melissa Clenney, Turner's downstairs neighbor, was awakened by the sound of "thumps and bumps" coming from Turner's apartment. Danner and Korean were the last-known persons to have seen Turner alive.
After leaving Turner's apartment, Danner and Korean walked to the apartment of their sister. Danner and Korean's route to the apartment was captured on surveillance video between 5:45 and 6:00 a.m.[4] Both Danner and Korean were carrying backpacks. Surveillance video from his sister's apartment complex later that morning captured Danner placing a large black trash bag in the apartment complex trash bins. In that video, Danner is seen wearing blue argyle socks and Converse tennis shoes.
The police searched the apartment where Danner had been staying with his sister. Of note, the police collected a pair of size 9 Converse tennis shoes, a pair of *548 gray Hanes underwear, and a pair of blue argyle socks. The shoes collected matched two bloody footprints located in Turner's apartment in terms of both pattern and size and matched a third in pattern only. An examination of the shoes showed discoloration and some reaction to testing, but it could not be definitively confirmed as blood. However, Turner's blood was found on the socks and the underwear seized by the police. The underwear also contained Danner's DNA, thereby linking him to that article of clothing. Additionally, Danner was interviewed by the police. During the interview, he had a black eye, indicative of his involvement in some altercation. Danner advised that he had received the injury from his nephew's hitting him with a broom on May 27, but Marshall and Smith both testified that Danner did not have a black eye when they saw him at the apartment in the early morning hours of May 28 prior to Turner's death.
On appeal, Danner asserts that the above-recited evidence was insufficient to support his conviction because the evidence presented was circumstantial. He specifically claims that there were no identifiable eyewitnesses to the murder, and the State was unable to produce or identify the murder weapons. With regard to the time frame and nature of the attack on Turner, Danner contends that the only evidence the State offered came from Ms. Clenney, the downstairs neighbor, claiming she heard "thumps and bumps" coming from Turner's apartment. He argues that those noises could reasonably have come from innocent conduct, such as footsteps, and it was possible that someone killed Turner after Danner had left the apartment. He also challenges the State's suggestion that he was attempting to destroy evidence by depositing items in a dumpster at the apartment complex the next morning. He notes that no trash was recovered or produced at trial linking him to the murder and that there is an equally innocent explanation for his actions. Thus, it also is not sufficient to rule out all other reasonable conclusions. He asserts that while the circumstantial evidence presented might be sufficient to prove that he was present at the time of the attack, it is not sufficient to prove that he participated in Turner's murder. He notes that presence alone at the scene of the crime is insufficient to establish guilt.
Danner is correct that if circumstantial evidence provides the basis to support a conviction, it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. See Edmond v. State , 351 Ark. 495, 95 S.W.3d 789 (2003). Whether the evidence excludes every other hypothesis is left to the jury to decide. Carmichael v. State , 340 Ark. 598, 12 S.W.3d 225 (2000). The credibility of witnesses is an issue for the jury and not the court. Burley v. State , 348 Ark. 422, 73 S.W.3d 600 (2002). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id.
As noted above, Danner challenges the sufficiency of the circumstantial evidence by taking the evidence presented and examining each fact in isolation. Yet jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole. Duren v. State , 2018 Ark. App. 68, at 4, 544 S.W.3d 555, 558. The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. Id.
Here, Danner was one of the last-known persons to see Turner alive. He is seen on surveillance videos after leaving Turner's apartment, setting the time frame for his departure shortly after unusual "thumps *549 and bumps" woke Turner's downstairs neighbor. His shoes match bloody footprints found at the scene, and Turner's blood is found on Danner's socks and underwear. On appeal, Danner asserts that the presence of blood on his socks and clothing does not prove that he actively participated in the murder, but only suggests he was present at the crime scene. Likewise, he contends the bloody shoe prints are insufficient because, while he wears a size 9 Converse shoe that matches the shoe prints found at the scene, Converse sells 270,000 pairs of that type of shoe every day; therefore, that evidence cannot rule out the possibility that someone else wearing a size 9 Converse shoe participated in Turner's murder. Thus, even if the shoe prints were found to have belonged to him, those prints do nothing more than show his presence at the scene. He claims that given the violent and bloody nature of Turner's murder, it would be entirely possible that he stepped in blood while leaving the apartment even though he did not participate in the murder. Thus, the shoe prints are not physical evidence that he killed Turner.
Danner's arguments on appeal that he could have been present at the scene but did not participate in Turner's murder directly contradict his statements to law enforcement during its investigation and his testimony at trial. Danner informed the police and testified at trial that Turner was alive and well when he left the apartment. In fact, he specifically testified that Turner was not bleeding when he left the apartment. Despite this, Danner could offer no explanation at trial for how Turner's blood could be found on his socks and underwear. He most certainly did not offer as an explanation his presence at the scene but a lack of participation in the crime.
When the evidence supporting the conviction is taken as a whole and in the light most favorable to the State, the foregoing evidence, while circumstantial, was sufficient to show that Danner was present at the time Turner was murdered and that he actively participated in the crime, either alone or with his brother, or joined its subsequent coverup. Thus, we affirm Danner's conviction for first-degree murder.
Affirmed.
Vaught and Murphy, JJ., agree.

This case is before us for the second time. We previously ordered a supplemental addendum in Danner v. State , 2018 Ark. App. 447, 2018 WL 4610851.

In addition to the lethal injuries, Turner also sustained roughly seventy puncture wounds in the shape of an "X" on his chest and left armpit.

In the investigation of the crime scene at Turner's apartment, no backpack was found by law enforcement.

One of the surveillance videos was time stamped 4:59 a.m., but the system had not been adjusted for daylight savings time.